**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 25-359 (RC) |
| | : | |
| ERIC MALIK SMITH, | : | Re Document No.:    26 |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### DENYING DEFENDANT'S MOTION TO SUPPRESS

## I.  INTRODUCTION

Defendant Eric Malik Smith ("Mr. Smith") moves to suppress evidence he contends was obtained in violation of the Fourth Amendment, which prohibits unreasonable searches and seizures. In October 2025, police stopped Mr. Smith's vehicle for expired tags and in the process, observed what appeared to be an open container of alcohol on the rear floorboard. Shortly thereafter, police directed Mr. Smith to lower the vehicle's windows. In the District of Columbia, it is unlawful to "drink an alcoholic beverage or possess in an open container an alcoholic beverage in or upon . . . [a] vehicle in or upon any street, alley, park, or parking area." D.C. Code § 25-1001(a)(2). Officers thus ordered Mr. Smith out of the vehicle, searched the area where the container was initially observed, retrieved the bottle, and confirmed that it contained alcohol.

Officers then continued searching the vehicle for additional open containers of alcohol and any cups or other drinking vessels that could be used to consume the alcohol. That search uncovered what appeared to be oxycodone pills in a backpack lying on the front-passenger floorboard and a firearm beneath the driver's seat. Police ultimately arrested Mr. Smith for

possession of an open container of alcohol ("POCA") (D.C. Code § 25-1001(a)(2)), among other offenses. The United States (the "Government") later obtained an indictment charging Mr. Smith with unlawful possession of a firearm by a felon, possession of oxycodone with intent to distribute, and possession of a firearm in furtherance of drug trafficking.

Mr. Smith argues that this evidence must be suppressed because his arrest for POCA was unsupported by probable cause and the vehicle search was overly broad. The Court disagrees. It concludes that officers had probable cause to arrest Mr. Smith for a POCA violation and to search the vehicle for additional POCA evidence. That search revealed additional contraband, which permissibly expanded the scope of the vehicle search for evidence of further criminal activity. Accordingly, for the reasons explained below, the Court denies Mr. Smith's motion to suppress.

## II.  BACKGROUND

### A.  Factual Background

On October 27, 2025, at approximately 1:20 a.m., Officers Drew and Hossain of a Federal Law Enforcement Task Force, which includes officers of the Metropolitan Police Department, conducted a traffic stop of a vehicle for expired tags.[1] Def.'s Mot., Ex. 1 at 2:29–2:41. The vehicle had two occupants: Mr. Smith, the driver, and a passenger seated in the front passenger seat. *See, e.g.*, *id.* at 2:45–2:50. Officer Drew approached from the rear on the driver's side, consistent with standard police training. Hr'g Tr. 31:10–32:8. At the same time, Officer Hossain approached from the rear on the passenger's side. *See, e.g.*, Def.'s Mot, Ex. 2 at 2:25–2:42. As he approached, Officer Drew shined a flashlight through the rear passenger window and

---

[1] For simplicity, the Court hereafter refers to members of the task force as "police" or "officers."

observed a half-empty glass bottle containing a yellow-amber liquid that appeared to be tequila. Def.'s Mot, Ex. 1 at 2:32–2:38; Hr'g Tr. 30:10–31:3; 32:9–33:6; 64:19–69:23. Officer Drew testified that although the vehicle's windows had a manufacturer's tint, if any, they were sufficiently clear to permit him to see inside when illuminated by the flashlight. Hr'g Tr. 30:10–31:3; 31:9–33:17. Based on his experience, Officer Drew identified the bottle as a distinctive Lunazul tequila bottle, which he recognized by its shape and labeling. *Id.* at 32:4–32:16, 53:4–53:10. Officer Drew then made contact with Mr. Smith to ascertain his identity, at which point Mr. Smith provided a false name and birthdate. Def.'s Mot., Ex. 1 at 2:38–3:49; Hr'g Tr. 35:21–36:20.

While Officer Drew was speaking with Mr. Smith, Officer Hossain ordered that the vehicle's windows be lowered. Def.'s Mot., Ex. 1 at 3:49. After Mr. Smith complied, Officer Drew took a second look into the back seat and confirmed his initial observation that the bottle appeared to be a half-filled tequila bottle. *Id.* at 3:52–4:00 Within seconds of the windows being lowered, Officer Drew called out: "POCA, we're going to step them out." *Id.* at 3:58. He then ordered Mr. Smith out of the vehicle. *Id.* at 4:03–4:20. Officer Drew notified other officers that the bottle was in the back seat. *Id.* at 5:01–5:03 Officer Hossain then opened the rear passenger door, reached into the rear passenger floorboard area, and retrieved a glass bottle partially filled with an amber-colored liquid and a broken seal. Def.'s Mot, Ex. 2 at 5:05–5:25. After smelling the liquid, Officer Hossain identified it as alcohol. *Id.* at 5:17–5:25.

While Mr. Smith remained detained, Officer Drew determined that the vehicle belonged to neither Mr. Smith nor the passenger. Def.'s Mot, Ex. 1 at 5:20–7:30; Hr'g Tr. 78:21–78:23. Officer Drew then directed officers to conduct a further search of the vehicle, Def.'s Mot, Ex. 1 at 6:00–6:06, which, according to his testimony, was aimed at locating additional open

3

containers. Hr'g Tr. 38:17–25, 41:16–41:24. Officers proceeded to search the vehicle more extensively, including the storage pocket behind the seat, underneath the driver's seat, within items laying on the back seat, and the backpack on the front passenger-side floorboard. Def.'s Mot., Ex. 2 at 6:14–7:17. The search of the backpack yielded what appeared to be oxycodone pills. *Id.* at 7:12–7:17, 7:51–8:03; Hr'g Tr. 53:17–19, 72:13–73:4; Gov't's Exs. GX10–GX11. Officers then expanded their search to the remainder of the vehicle, including the trunk and its contents. Def.'s Mot., Ex. 2 at 9:18–11:08. During that continued search, Officer Hossain examined a pile of miscellaneous items on the back seat and discovered two additional alcohol bottles, which were partially covered by various items. *Id.* at 11:13–11:31. Officer Drew also searched the vehicle and recovered a firearm from underneath the driver's seat. Def.'s Mot., Ex. 1 at 18:32–18:36. Ultimately, Police placed Mr. Smith under arrest for a POCA violation, among other things, and searched his person, uncovering five hundred dollars ($500). *Id.* at 11:28; *cf.* Def.'s Mot., Ex. 2 at 13:15.

### B.  Procedural Background

On November 14, 2025, the Government obtained a federal indictment against Mr. Smith, charging him with:

(I)    unlawful possession of a firearm and ammunition by a felon (18 U.S.C. § 922(g)(l));

(II)   unlawful possession with intent to distribute oxycodone (21 U.S.C. §§ 84l(a)(l), 841(b)(l)(C)); and

(III)  using, carrying, and possessing a firearm during, in relation to, and in furtherance of a drug trafficking offense (18 U.S.C. § 924(c)(l)(A)(i)).

Indictment, ECF No. 13.

Thereafter, Mr. Smith filed a motion to suppress all evidence obtained as a result of his arrest and the vehicle searches that all took place on October 27, 2025. Def.'s Mot. Suppress ("Def.'s Mot."), ECF No. 26. The Government opposed the motion. Gov't's Opp'n, ECF No. 27. On March 20, 2026, this Court held a hearing on the motion, where both parties introduced evidence and Officer Drew testified on behalf of the Government. Min. Entry (Mar. 20, 2026); *See* Hr'g Tr. 21:21. The Court ordered supplemental briefing on May 4, 2026 as to the applicability of certain precedent concerning the knowledge of Officers Drew and Hossain. Min. Entry (May 4. 2026); *see also infra* p. 9. The motion is now ripe for this Court's consideration.

### III.  ANALYSIS

Authorities arrested Mr. Smith after stopping him for a traffic violation and observing what appeared to be a half-filled bottle of tequila in the vehicle's backseat floorboard. [2] After searching the vehicle, police found additional open containers of alcohol, oxycodone in a backpack, and a firearm underneath the driver's seat. Mr. Smith contends that the physical evidence recovered from the vehicle was seized as a result of his unlawful arrest and an overbroad vehicle search. Def.'s Mot. at 8–14. He thus seeks to suppress that evidence.

"When the government conducts an unconstitutional search or seizure, the Court must exclude any evidence obtained as the 'fruit' of that search or seizure." *United States v. Sheffield*, 799 F. Supp. 2d 22, 28 (D.D.C. 2011) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). Generally, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1. (1978). When "a defendant produces evidence that he was

---

[2] Mr. Smith does not challenge the traffic stop as unreasonable under the Fourth Amendment. *See* Def.'s Mot. at 9.

arrested or subjected to a search without a warrant," however, "the burden shifts to the government to justify the warrantless arrest or search." *United States v. Jones*, 142 F. Supp. 3d 49, 56 (D.D.C. 2015) (citation modified).

Mr. Smith's motion to suppress raises two issues. First, he contends that officers lacked probable cause to arrest him for a POCA violation because the evidence underlying the arrest was obtained unlawfully. Second, he contends that the officers' expanded search of his vehicle for open containers was impermissibly overbroad. The Court addresses each in turn below.

### A. The Initial Vehicle Search for POCA evidence and Mr. Smith's POCA Arrest were Supported by Probable Cause.

Mr. Smith first argues that his POCA arrest was not supported by probable cause because the evidence underlying that arrest—the initial open container Officer Drew observed on the rear floorboard—was obtained unlawfully. Def.'s Mot. at 8–10. Under the Fourth Amendment, warrantless searches are "per se unreasonable" and "subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (citation modified). One such exception, the automobile exception, permits a warrantless search of a vehicle when officers have probable cause to believe it contains contraband. *United States v. Maynard*, 615 F.3d 544, 567 (D.C. Cir. 2010).

Against that backdrop, Mr. Smith argues that Officer Hossain's order directing him to roll down the vehicle's windows constituted an unlawful search because, at that point, officers lacked probable cause to believe the vehicle contained contraband. Def.'s Mot. at 8–10. According to Mr. Smith, the order was issued solely to expose the vehicle's interior, and officers did not observe the half-filled tequila bottle on the backseat floorboard until after the windows were lowered. *Id.* at 9–10. Even assuming Officer Drew observed the open container through the rolled-up window, Defendant contends that Officer Drew's knowledge cannot be imputed to

Officer Hossain. Def.'s Reply at 4–5. On that basis, Defendant argues that the bottle must be suppressed as the fruit of an unlawful search. The Government responds that officers already had probable cause to search the vehicle because Officer Drew observed the open container before the windows were lowered. Gov't's Opp'n at 10.

The Court finds that Officer Drew credibly testified that he observed an open container through the rolled-up window as he approached the vehicle from the driver's side. Hr'g Tr. 30:14–31:03; 31:09–34:08. This is consistent with body-worn camera footage, which shows Officer Drew approaching the vehicle and shining a flashlight through the rolled-up window and illuminating what appears to be a large glass bottle half-filled with amber liquid. Def.'s Mot, Ex. 1 at 2:32–2:38. Based on his training and experience, Officer Drew recognized the bottle as a distinctive Lunazul tequila bottle by its shape and labeling. Hr'g Tr. 32:4–16, 53:4–10. At that time, Officer Drew had not communicated his observation to Officer Hossain. Def.'s Mot., Ex. 1 at 2:38–3:49. Moments later, Officer Hossain, who was positioned on the opposite side of the vehicle, instructed Mr. Smith to roll down the windows. Def.'s Mot., Ex. 1 at 3:49. However, the Government did not call Officer Hossain as a witness at the evidentiary hearing. *See generally* Hr'g Tr. As a result, the record does not establish whether Officer Hossain independently possessed sufficient information to justify a search of the vehicle—whether he could see through the rolled-up windows and determine that contraband was likely present.

Viewed in isolation, the officers' knowledge presents a potential problem. Officer Drew alone observed the open container, while Officer Hossain was the officer who directed the windows to be lowered. If their knowledge is analyzed separately, one could argue that only Officer Drew possessed the facts necessary to justify a vehicle search. Under that view, the

horizontal collective knowledge doctrine would likely not support the search.[3] *See United States v. Gorham*, 317 F. Supp. 3d 459, 473 (D.D.C. 2018) (declining "to extend the collective knowledge doctrine to encompass cases in which no actual communication or direction occurs between the officer conducting the search" and "the officer in possession of the information giving rise to the required reasonable suspicion"). Nevertheless, the search may still have been reasonable under the Fourth Amendment.

The Fifth Circuit confronted a similar situation in *United States v. Ragsdale*, where officers stopped a vehicle for speeding. 470 F.2d 24, 25–30 (5th Cir. 1972). One officer observed a firearm in plain view beneath the front seat. *Id.* at 26. While that officer escorted the driver to the patrol vehicle, a second officer—who had not seen the firearm and apparently was unaware of the first officer's observation—searched the vehicle including the passenger compartment. *Id.* at 26–27. The search uncovered additional firearms and currency. *Id.* at 26. The Fifth Circuit upheld the search, explaining that Fourth Amendment reasonableness does not turn solely on the knowledge of the officer who physically conducts the search. *Id.* at 30  (holding that the searching officer's individual knowledge is not the "alpha and omega" of the Fourth Amendment inquiry).

The court reasoned that once the first officer observed the firearm, a search of the vehicle at that point in time was "factually and practically" justified. *Id.* Had the second officer not begun searching when he did, the first officer inevitably would have directed the search or

---

[3] The horizontal collective knowledge doctrine allows the aggregation of information known by multiple officers, which permits probable cause to be established based on the collective knowledge of those officers. *See Gorham*, 317 F. Supp. 3d at 471 (citing *United States v. Burnett*, 827 F.3d 1108, 1114–15 (D.C. Cir. 2016)). The circuits are split as to whether such knowledge can be aggregated if there is no communication between the officers. *Id.* The D.C. Circuit, however, has not yet weighed in on this issue. *Id.*

conducted it himself. *Id.* 30–31. Thus, "[t]he fact that [the second officer] moved too swiftly" did not invalidate a search that was otherwise supported by probable cause. *Id.* at 30. Nor, according to the court, should the Fourth Amendment analysis devolve into a "hypertechnical" exercise that artificially separates officers' knowledge when they are working together at the scene. *Id.*

Relying on *Ragsdale*, another court in this District reached a similar conclusion in *Gorham*, 317 F. Supp. 3d at 460–61. There, the court upheld a protective frisk even though the officer who conducted it did not personally possess all the facts necessary to justify the search. *Id.* at 473–75. Applying *Ragsdale*, the court explained that a search remains reasonable where "an officer with all the required information was present and it is clear the search would imminently and lawfully have been made." *Id.* at 474 (citation modified). Although another officer initiated the frisk before receiving any instruction, the court found that fact immaterial because the officer possessing the necessary information was working closely with the frisking officer and inevitably would have ensured that the frisk occurred. *Id.* Accordingly, as in *Ragsdale*, the fact that one officer "moved too swiftly" was "of no moment." *Id.* at 474–75.

In light of those decisions, this Court ordered supplemental briefing addressing the applicability of *Ragsdale* and *Gorham* to this case. Min. Entry (May 4. 2026). In his supplemental brief, Mr. Smith argues that the record does not support a "confident finding" that Officer Drew would have ordered the windows lowered or otherwise conducted a search had Officer Hossain not acted first. Def.'s Suppl. Br. at 3–4, ECF No. 31. According to Defendant, if Officer Drew was certain that he observed an open container as he approached the vehicle, he would have immediately directed the occupants to lower the windows; yet he did not do so. *Id.* at 4.

The Government responds that Officer Drew and Officer Hossain were working closely together throughout the stop and subsequent arrest. Gov't's Suppl. Br. at 6, ECF No. 32. According to the Government, Officer Drew acquired all the facts necessary to justify a vehicle search when he observed what appeared to be an open bottle of alcohol inside the vehicle at the onset of the stop, before the windows were lowered. *Id.* The Government further notes Officer Drew's testimony that, consistent with his training and experience, he initially focused on identifying the driver and preventing any attempt to flee before taking additional investigative steps. *Id.* at 5. Finally, the Government points to Officer Drew's testimony concerning the dangers posed by allowing a driver to continue operating a vehicle while possessing an open container of alcohol, arguing that he inevitably would have directed a search or conducted one himself had Officer Hossain not acted first. *Id.* at 6.

The Court agrees with the Government. Officer Drew testified that he observed the open container through the vehicle's rolled-up window and that the tint was not so dark as to obstruct his view. Hr'g Tr. 31:21–32:1; 32:2–33:6. His testimony is consistent with the body-camera footage, which shows him shining a flashlight through the rear driver's-side window as he approached the vehicle, illuminating a glass bottle that appeared to be approximately half full of an amber-colored liquid. Def.'s Mot, Ex. 1 at 2:32–2:38. At that moment, Officer Drew possessed sufficient information to justify a search of the vehicle, that is, probable cause to believe that evidence of a crime was likely present in the vehicle.

Officer Drew also explained why he did not immediately act on that observation. He testified that before "taking [a] stop to [a] different direction," he attempts to conduct every traffic stop in a consistent manner by first identifying the driver. Hr'g Tr. 34:18–23; 38:01–38:09. As he explained, "[b]ased off of [his] experience and training, the first goal of every

10

traffic stop is to attempt to identify the driver of the vehicle." *Id.* at 35:02–13; 37:23–38:09. He

further testified that in conducting traffic stops, he introduces himself, explains the reason for the

stop, and begins the identification process before pursuing additional investigative measures. *Id.*

34:18–23. According to Officer Drew, this practice is informed by prior experiences with drivers

fleeing traffic stops, and without first obtaining identifying information, an officer's ability to

continue an investigation may be significantly hindered. *Id.* 35:06–13.

Officer Drew further testified that after the windows were lowered, he looked into the

vehicle again to confirm what he had previously observed. *Id.* 37:25–38:01. As he explained:

> Because I understand that every action I do on my job has serious
> implications for everyone I interact with . . . . I like to confirm to
> ensure that I know what I'm looking at.

*Id.* 38:01–05.

After making that second observation and after obtaining identifying information for Mr.

Smith, the driver, Officer Drew decided that it was appropriate to "take the traffic stop to that

different direction." Thus, the fact that Officer Drew did not immediately order the windows

lowered after initially observing the open container does not undermine his testimony that he had

already observed what appeared to be contraband inside the vehicle. Rather, the record

demonstrates that he delayed further action because he was following his standard traffic-stop

procedures and sought to confirm his observation before escalating the encounter. Moreover,

Officer Drew testified about the importance of searching for open containers: it "remov[es] the

ability for somebody to either begin or continue drinking that alcohol" which could lead to a

"drunk driving incident." *Id*. 41:16–24. And Mr. Smith's vehicle was stopped in a populated area

near an interstate onramp. *Id.* 41:02–09.

Based on these circumstances, the Court finds that Officer Drew would have directed a

search of the vehicle—or conducted one himself—had Officer Hossain not acted first. Indeed,

within seconds of the windows being lowered and Officer Drew confirming his initial observation, he announced the presence of an open container, which immediately prompted the search that inevitably would have occurred had Officer Hossain not first ordered the windows lowered. Moreover, Officer Drew and Officer Hossain were working closely together throughout the traffic stop and subsequent arrest. *See generally* Def.'s Exs. 1–2. Thus, as in *Ragsdale* and *Gorham*, not only would have Officer Drew conducted the search himself based on the probable cause he maintained, he in fact did re-conduct the search himself, locating the firearm at issue in this case. *See* Def.'s Mot., Ex. 1 at 18:32–18:36.

The facts of this case fall squarely within the reasoning of *Ragsdale* and *Gorham*. As in those cases, the fact that Officer Hossain may have "moved too swiftly" by ordering the windows lowered does not render the search unreasonable. At that point, Officer Drew had already observed the open container and thus already possessed the information necessary to justify the search, and he would imminently have authorized or conducted the search himself. The Court therefore concludes that the directive to lower the windows and the search of rear floorboard for the Lunazul bottle did not violate the Fourth Amendment.[4]

After Officer Drew communicated his observation of the open container, Officer Hossain then opened the rear passenger door and retrieved a glass bottle from the floorboard. Def.'s Mot., Ex 2 at 5:05; *see also* Hr'g Tr. 38:19–20. The bottle was partially filled with an amber liquid, labeled as tequila, and had a broken seal. Def.'s Mot., Ex 2 at 5:15–5:23; Gov't's Ex. GX5. After smelling the contents, Officer Hossain identified it as alcohol. Def.'s Mot., Ex 2 at 5:20–5:25.

---

[4] Because the Court finds that the vehicle search (i.e., Officer Hossain's order that the vehicle's windows be lowered) is permissible under *Ragsdale* and *Gorham*, the Court need not determine whether the search was also permissible under the horizontal collective-knowledge doctrine.

Officers at this juncture had probable cause to arrest Mr. Smith for a POCA violation. *See* D.C. Code § 25-1001(a)(2) ("[N]o person in the District shall . . . possess in an open container an alcoholic beverage in or upon . . . [a] vehicle in or upon any street, alley, park, or parking area.").

In short, the lowering of the windows, the search for the Lunazul bottle on the rear floorboard, and Mr. Smith's subsequent POCA arrest were permissible under the Fourth Amendment. As explained above, Officer Drew observed what appeared to be an open container of alcohol through the vehicle's rolled-up window as he approached, thereby establishing probable cause to believe that further evidence of a POCA violation was present inside the vehicle. Although Officer Hossain directed the occupants to lower the windows before Officer Drew communicated his observation, that directive was lawful under the reasoning of *Ragsdale* and *Gorham* because Officer Drew already possessed the information necessary to justify the search and would imminently have directed or conducted the search himself. Once the windows were lowered, Officer Drew confirmed his initial observation, and the ensuing search uncovered the open tequila bottle. The discovery of that open container, in turn, provided probable cause to arrest Mr. Smith for a POCA violation. Accordingly, suppression of the open tequila bottle is unwarranted.

### B. Officers Reasonably Continued Searching for Evidence of a POCA Violation and Lawfully Expanded the Search Upon Discovering Additional Contraband.

Mr. Smith next argues that the officers' search of the remainder of the vehicle—including beneath the driver's seat, inside the backpack on the front-passenger floorboard, and within a pile of miscellaneous items on the rear seat—was overbroad. Def.'s Mot. at 10–14. Specifically, he contends that once officers recovered the open container visible on the rear floorboard, any justification to search further for evidence of POCA dissipated because a POCA violation is self-contained. *Id.* at 11–12. The Court disagrees. As explained below, once officers retrieved the

13

open contain on the rear floorboard and identified it as containing alcohol, officers were permitted to continue searching for additional evidence relevant to the POCA offense under the search-incident-to-arrest doctrine. And when that search uncovered a firearm and suspected narcotics, officers acquired probable cause to believe the vehicle contained evidence of additional criminal activity, thereby justifying a broader search of the vehicle under the automobile exception.

As noted, warrantless searches are "per se unreasonable under the Fourth Amendment" unless they fall within a "specifically established and well-delineated" exception. *Acevedo*, 500 U.S. at 580 (citation modified). To justify its search, the Government invokes the search-incident-to-arrest doctrine, Gov't's Opp'n at 10–15, which permits a warrantless search of a vehicle when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation modified). This "reasonable to believe" standard is less demanding than probable cause but requires more than a mere hunch; it is akin to the "reasonable suspicion" standard required for a *Terry* search. *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010); *see also United States v. Abdus-Price*, 518 F.3d 926, 929 (D.C. Cir. 2008).

Applying that standard to the facts of this case, the Court finds *United States v. Nash & Lewis* persuasive. 100 A.3d 157 (D.C. 2014). There, the D.C. Court of Appeals upheld a vehicle search for additional evidence of a POCA violation beyond the open container itself. *Id.* at 164–65. The vehicle was occupied by two individuals, and officers observed a large bottle of tequila in a center-console cup holder between them. *Id.* at 160, 164. The officers testified that people typically consume tequila from cups rather than directly from the bottle. *Id.* at 164. Relying on "common practical sense," the court concluded that hard liquor is not ordinarily consumed

14

straight from the bottle and that alcoholic beverages are often poured into cups, thermoses, cans, or other containers that do not necessarily bear visible alcohol labels. *Id.* Although appellee had not appeared intoxicated nor smelled of alcohol, the court explained that officers could nevertheless "reasonably draw the common-sense inference that the placement of the half-full bottle of tequila in the center-console cup holder was more suggestive of consumption in the car than of transportation in the car for future consumption elsewhere." *Id.* at 164–65. Accordingly, the court held that officers were justified in searching the vehicle further for cups or other drinking vessels that could constitute additional evidence of the POCA offense and help establish which occupant possessed or intended to consume the alcohol.[5] *Id.* at 165 ("[C]ups found in proximity to the tequila bottle, and in particular to [a vehicle's occupant], would be relevant to

---

[5] Other courts have held that an open-container offense is typically self-contained and does not, without more, give rise to a reasonable belief that additional open containers will be found elsewhere in a vehicle. *See e.g.*, *United States v. Freeman*, No. 25-CR-00127-BAH, Tr. of Oral Ruling at 50:01–06 (D.D.C. Aug. 13, 2026); *United States v. Pena-Armenta*, No. 2:19-CR-00348-DAK, 2020 WL 7645443, at *13 (D. Utah Dec. 23, 2020); *United States v. Thomas*, 434 F. Supp. 3d 576, 585 (W.D. Ky. 2020). However, whether additional relevant evidence is likely to be found in a vehicle depends on the totality of the circumstances and the nature of the contraband. *See Nash & Lewis*, 100 A.3d at 163 n.1.

Indeed, in *Nash & Lewis*, the court held that the circumstances surrounding one of the consolidated appellees did not support a reasonable belief that additional POCA-related evidence would be found in the vehicle after police observed an opened Four Loko can (an individually packaged malt beverage). *Id.* at 163–64. The court emphasized that "[n]o officer testified to having experience recovering additional POCA evidence from vehicles in comparable circumstances" and that "[t]here was no evidence that Four Loko is typically packaged, sold, or consumed in a manner that would suggest that additional cans of Four Loko, or other evidence relevant to POCA, would be in the car." *Id.* at 162.

As discussed below, the circumstances here are different. Officer Drew testified that tequila is not typically consumed directly from the bottle and that its consumption ordinarily involves other items, such as cups. Based on that experience, Officer Drew reasonably believed that additional evidence relevant to the POCA offense would likely be found elsewhere in the vehicle.

whether [the occupant] was drinking from, or planned to drink from, the tequila bottle, and thus constructively possessed the tequila bottle.").

The same reasoning applies here. The record supports a reasonable belief that additional evidence of a POCA violation would be found elsewhere in the vehicle, including beneath the driver's seat, in the backseat, and inside Mr. Smith's backpack. After Officer Hossain recovered the Lunazul bottle that Officer Drew had initially observed, Officer Drew directed a further search of the vehicle. Def.'s Ex. 2 at 6:06. Officer Drew testified that the purpose of the search was to locate additional evidence related to the POCA offense, such as cups, shot glasses, flasks, or other drinking vessels. Hr'g Tr. 38:17–25; 41:16–24. Based on his training and experience, Officer Drew further testified that individuals frequently transfer alcohol from larger containers into smaller receptacles for consumption. *Id.* 38:17–25, 43:09–16, 46:12–17. He also noted that the open container was located within arm's reach of both Mr. Smith and the passenger. *Id.* 39:25–40:09. Under these circumstances, searching for POCA evidence in areas immediately accessible to the vehicle's occupants and in close proximity to the open container—including beneath the driver's seat, Mr. Smith's backpack lying on the front passenger floorboard, and the rear seat—was reasonable. *See Nash & Lewis*, 100 A.3d at 165.

That lawful search uncovered a firearm under the driver's seat and pills that appeared to be narcotics (i.e., oxycodone) inside Mr. Smith's backpack. *See* Gov't's Exs. GX3–GX4, GX7–GX8, GX10–GX11. Firearms and narcotics are well-recognized indicia of drug trafficking. *See United States v. Gibbs*, 904 F.2d 52, 57 (D.C. Cir. 1990) ("Intent to distribute may be inferred from a combination of suspicious factors, such as possession of a relatively large amount of cash, weapons, [and] more than a minimal amount of narcotics."). The discovery of that contraband therefore justified a broader vehicle search for evidence related to suspected drug trafficking

16

under the automobile exception. *See Florida v. Harris*, 568 U.S. 237, 243 (2013) (citation modified) ("A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present."); *see also United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997) ("If probable cause justifies the search of a lawfully stopped vehicle it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (citation modified) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982))).

Officers therefore properly expanded their search to additional areas of the vehicle, including the trunk. *See Turner*, 119 F.3d at 21 (holding that the presence of drug paraphernalia on driver's lap and drugs behind the driver's seat authorized a warrantless search of the vehicle, including its trunk); *United States v. Garrett*, 959 F.2d 1005, 1007–08 (D.C. Cir. 1992) (recognizing that the permissible scope of a search may expand as officers uncover evidence giving rise to probable cause to believe additional contraband is present elsewhere).  During that search, officers recovered additional open containers of alcohol. *See* Gov't's Ex. GX6.

Mr. Smith was subsequently arrested for the POCA violation and suspected drug-trafficking. When conducting an arrest, "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 762–63 (1969). A search of Mr. Smith's person incident to his arrest revealed approximately five hundred dollars ($500) in twenty-dollar denominations, which officers could reasonably view as additional relevant evidence consistent with drug trafficking. *See Gibbs*, 904 F.2d 52, 57 (holding that the possession of a large amount of cash, weapons, and narcotics is indicative of drug trafficking); *Bruce v. United States*, 305 A.3d 381, 400 (D.C. 2023) (holding that the presence of cash in small denominations and a

17

firearm is indicative of a drug-dealing operation). The search of Mr. Smith's person was therefore "entirely reasonable."

In sum, the vehicle search did not exceed constitutional bounds. Officers reasonably continued searching the vehicle for evidence relevant to the POCA violation, including cups, flasks, and other drinking vessels that could bear on possession or consumption of the alcohol recovered from the vehicle. That lawful search led to the discovery of a firearm and suspected narcotics, which in turn supplied probable cause to believe additional evidence of drug trafficking would be found elsewhere in the vehicle. Because each component of the search was supported by either the incident-to-arrest exception or the automobile exception, the officers' search of Mr. Smith's backpack, the area beneath the driver's seat, the rear seating area, the trunk, and ultimately Mr. Smith's person was reasonable under the Fourth Amendment. The Court therefore rejects Mr. Smith's contention that the search was impermissibly broad. Suppression of the narcotics, the firearm, the additional open containers, and the currency is thus unwarranted.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 26) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 12, 2026                                         RUDOLPH CONTRERAS
                                                             United States District Judge

18